UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

RECEIVED
MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

SEP 04 2014

FILED _____
DOCKETED _____
DATE        INITIAL

**DuShawn N. Thomas**
Appellant,

9th Cir. Case No. **14-55473**
Originating Court Case No.
**8:13-cv-00885-JLS-JPR**

vs.

**Entrepreneur Media, Inc.**

Appellee(s).

# APPELLANT'S INFORMAL BRIEF
(attach additional sheets as necessary)

**1.    Jurisdiction**

    a    Timeliness of Appeal:

        (i) Date of entry of judgment or order of originating court:

        **February 20, 2014**

        (ii) Date of service of any motion made after judgment (other than for fees and costs): _____

  (iii)  Date of entry of order deciding motion:

  _____

  (iv)  Date notice of appeal filed: **March 21, 2014**

  (v)  For prisoners, date you gave notice of appeal to prison authorities: _____

2.  **What are the facts of your case?**

Fact One: Negligence In Responding To Motion

I am a litigant proceeding pro se in this case fighting to protect intellectual property that both myself and a co-defendant in the original case– D. Nicole Enterprises, LLC (D. Nicole), a company I am principal over – share joint interest in. Because I am unable to afford an attorney I am forced to represent myself regarding the allegations of trademark infringement, false designation of origin, cyberpiracy, California unfair competition, and common law trademark infringement. Due to my lack of legal skill, intelligence, and coherency of court statues and rules I neglected in responding to an Amended Motion for Default Judgment against D. Nicole and a Proposed Order dismissing the case against me filed by the counsel of

defendant/appellee Entrepreneur Media Inc. (EMI) on January 6, 2014.  My negligence in responding was not in bad faith.  In a Notice of Unopposed Motion filed by defendant/appellee on February 6, 2014 the counsel for defendant/appellee insisted on an oral argument at a hearing scheduled for February 21, 2014, and due to this insisted request I assumed that at the hearing I would be able to present evidence to the judge that I am not unopposed to the motion although I naively did not respond to the motion, and I was definitely not interested in dropping the case. At court I planned on bringing evidence to show the judge that there was communication between defendants/appellee's counsel and I on December 2, 2013 that explicitly let EMI's counsel know of my oppositions to a voluntary dismissal; it was always my intent to move forward with defending myself against the allegations brought against me.

Fact Two: EMI's Counsel Failed To Disclose Communications Between Us To The Court Violating The General Duty Of Candor Due To The Court

EMI counsel's failure to disclose email communications regarding my opposition to a voluntary dismissal had a direct impact on the court's

judgment. If the court knew of the emails concerning my opposition to voluntary dismissal initially when EMI's counsel filed their amended motion there would be no basis to grant the dismissal.

Counsel's failure to disclose my opposition within their motion to the court is unethical. Their silence on this matter shows a violation of the general duty that we all have to the court. Their silence invoked a material misrepresentation that they did not know of my position regarding a voluntary dismissal. The filing of the amended motion and a notice of unopposed motion which did not disclose this material fact inclined the court to believe this misrepresentation to be true. The misrepresentation was meant to be acted on in order to remove me from the case so that the defendant/appellee be granted default judgment against D. Nicole. The court acted upon this misrepresentation by a voluntary dismissal against me and granting default judgment against my co-defendant D. Nicole – which in a statement made by the court in a Civil Minutes document dated February 20, 2014, because there was no opposition to the motion *"Rule 54 (a) is therefore no longer a barrier to entry of a default judgment against D. Nicole"*; I sustained extraordinary damages due to this misrepresentation.

9th Cir. Case No. **14-55473**                                                                                          Page 5

Fact Three: Defendant/Appellee's Mark ENTREPRENEUR Is A Generic Term And Is Not Protected Under The Lanham Act

It is my understanding that the Lanham Act requires a mark to fall within certain specifications of uniqueness to identify the owner of a mark's goods or services within the marketplace. A generic term is not one that falls into the category of uniqueness to identify the owner of the mark's goods or services. Instead it is simply a mark that is generic and functions as the exact meaning of its goods and services, and is not set apart from its functionality to the word which is in the public domain. § 15 (15 U.S.C. § 1065) the fourth listing states:

> "No incontestable right shall be acquired in a mark which is the generic name for the goods or services or a portion thereof, for which it is registered."

The information industry is considered one of the most important economic sectors. Information is distributed to the consumer in many different fashions – magazines (on and off line), newspapers (on and off line), radio, television, podcast, and a variety of other distribution avenues that house content for consumers. The listed vessels that house the information or content sold to the consumer is not the "good" that would constitute registration of a trademark, instead it is the means by which the provider - such as EMI, D. Nicole, and myself - provides the information that the consumer is interested in buying; the vessel or "the building" of delivering the content to the consumer is simply the entity that binds the information together for sale. Consumers don't buy magazines they buy information that piques their interest and is bound together and housed in the format of a magazine. If you take for instance a grocery store, a consumer's intentions when grocery shopping is to purchase a variety of different goods like produce, dairy products, toiletries, or other products offered in or housed in a grocery store, consumers don't buy the building that the groceries are housed in. The consumer's interest is solely on purchasing the groceries, not the type of building the groceries or the "goods" are housed in – the

9th Cir. Case No. **14-55473**                                                                 Page 7

consumer who buys information buys the information not the type of "building" the information is housed in.

EMI has a registered trademark that is a generic name of the goods for which it is registered. EMI publishes information housed in the form of a physical and online magazine. Their information is primarily focused on the entrepreneurial subsector of the information industry. EMI has proven that they are opposed to anyone publishing information to consumers in the entrepreneurial subsector that uses the mark entrepreneur or any variation of it, like entrepreneuress. With that said, if EMI claims that no one has the ability to utilize the term entrepreneur to describe entrepreneurial information how else can we describe a term that is generic with no secondary meaning? Mentioning the term entrepreneur to an everyday consumer doesn't spark their mind to consider EMI's registered mark ENTREPRENEUR and/or a good associated with that mark because the term at the end of the day references a particular type of person involved in a particular type of act. On the other hand a mark like "Xerox" is so unique to a consumer that no other thought would come to the mind of a

consumer except the good that the mark serves. Considering that Xerox is recognized as a fanciful mark, let's consider marks that are recognized as descriptive, "Sharp" for televisions, or "Windows" for windowing software, or "Power Computing" for computers based on the power PC chip – these are clear examples of marks that are descriptive but clearly have secondary meanings to them. Conclusion cannot be made the same concerning EMI's mark of ENTREPRENUR for published entrepreneurial information sold to consumers. EMI's mark is invalid and is not protected under the Lanham Act because it is generic.

Fact Four: The Allegations Brought Forth By The Defendant/Appellee Are Frivolous Because Of The Mark's Generalness And:

1. Violates my First Amendment right of the United States of America to freedom of speech and press; and
2. Violates the United States Antitrust Laws - Sherman Act outlawing monopolization

By not allowing me or any entity - individual or business - the ability to freely publish entrepreneurial information by using the term entrepreneur to describe content prohibits the ability to freely express an opinion publicly without government interference and being subject to laws against libel; violating rights of the first amendment. Moreover, the United States Antitrust Laws' Sherman Act prohibits unlawful business practices, especially those intended to monopolize or attempt to monopolize. Allowing EMI sole ownership of the term entrepreneur for the sale of entrepreneurial information is a monopolization of a word in the public domain and should be considered without a reason of doubt an unlawful business practices.

Fact Five: The United States Trademark and Patent Office found no objection to the registration of the ENTREPRENEURESS mark

§ 12 (15 U.S.C. § 1062) (a) states:

> *"Upon the filing of an application for registration and payment of the prescribed fee, the Director shall refer the application to the examiner*

> *in charge of the registration of marks, who shall cause an examination to be made and, if on such examination it shall appear that the applicant is entitled to registration, or would be entitled to registration upon the acceptance of the statement of use required by section 1051(d) of this title, the Director shall cause the mark to be published in the Official Gazette of the Patent and Trademark Office ..."*

By the USPTO publishing the mark ENTREPRENEURESS proves that they thoroughly examined the uniqueness of the mark towards its goods and services and considered it valid for registration. In respect to the high considerations placed upon examining applications for issuing valid registration for marks, current registrations must also be considered against all applicants. In the case of the proposed registration of the mark ENTREPRENEURESS and the current registration of the mark ENTREPRENEUR, the United States Trademark and Patent office found no grounds for not issuing a registration of the mark ENTREPRENEURESS. Furthermore, the USPTO recognizes that even registered marks can be

generic, therefore, there are laws put in place to remove those marks from registration in protection of the relevant public.

§ 14 (15 U.S.C. § 1064) (3) gives justification to the invalidation and grounds for cancellation of generic names for goods or services:

> *(3) At any time if the registered mark becomes the generic name for the goods or services, or a portion thereof, for which it is registered, or is functional, or has been abandoned, or its registration was obtained fraudulently or contrary to the provisions of section 1054 of this title or of subsection (a), (b), or (c) of section 1052 of this title for a registration under this chapter, or contrary to similar prohibitory provisions of such said prior Acts for a registration under such Acts, or if the registered mark is being used by, or with the permission of, the registrant so as to misrepresent the source of the goods or services on or in connection with which the mark is used. If the registered mark becomes the generic name for less than all of the goods or services for*

*which it is registered, a petition to cancel the registration for only those goods or services may be filed. A registered mark shall not be deemed to be the generic name of goods or services solely because such mark is also used as a name of or to identify a unique product or service. The primary significance of the registered mark to the relevant public rather than purchaser motivation shall be the test for determining whether the registered mark has become the generic name of goods or services on or in connection with which it has been used.*

EMI insist that their marks serve different international class categories but all in the field of entrepreneurial activities, namely the start-up and operation of small business enterprises – which from this description of their marks deem it reasonable to determine that the registered marks have a generic name of its goods and services on or in connection with which it has been used. Moreover, the mark ENTREPRENEUR should have no protection under the Lanham Act and should be cancelled.

9th Cir. Case No. **14-55473**                                                                 Page 13

**3. What did you ask the originating court to do (for example, award damages, give injunctive relief, etc.)?**

1. Dismiss the complaint brought fourth by defendant/appellee and grant judgment in my favor.

2. Grant judgment declaring that defendant/appellee's registration of the mark ENTREPRENEUR be cancelled due to being generic.

3. Award to me all cost I've incurred in connection with this litigation and any further relief as the court deemed just and proper.

**4. State the claim or claims you raised at the originating court.**

The ENTREPRENEUR mark is invalid and incapable of functioning as a lawful trademark because it is generic to the goods and services it provides.

**5. What issues are you raising on appeal? What do you think the originating court did wrong?**

Weather the failure of counsel for Entrepreneur Media Inc., failure to disclose the communication between us concerning my opposition to a voluntary dismissal contributed to the voluntary dismissal ruled against me. Furthermore, EMI counsel's failure to disclose such material fact in their motion to dismiss against me warranted the court to assume that I was know longer interested in moving forward with defending myself against EMI's claims against me.  Because of EMI counsel's violation of a general duty of candor to the court I believe that the court showed prejudice against me by making an unfavorable judgment without the full knowledge of facts. Consequently, not giving me the opportunity to be heard on why the claims brought by the defendants/appellees are frivolous, therefore, infringing on my constitutional rights; ultimately leading to extreme damages on my behalf caused by a voluntary dismissal and a default judgment.

**6. Did you present all issues listed in #5 to the originating court?**

    ___NO___        If not, why not?

    Yes/No

I immediately thought my next steps would be to appeal the judgment to the court of appeals, I wasn't aware that I had the opportunity to present the issues listed in #5 to the originating court.

**7. What law supports these issues on appeal? (You may, but need not, refer to cases and statutes.)**

Although my lack of legal experience hinders me in answering this question thoroughly I have done my due diligence on statues and case laws and I have found these findings:

1. There is a general duty of candor due to the court by all officials of the court in Gum v. Dudley, 505 SE 2d 391 - W Va: Supreme Court of Appeals 1997.

2. § 14 (15 U.S.C. § 1064) (3) give justification to the invalidation and grounds for cancellation of generic names for goods or services.

3. If there is no grounds not to register a trade name the USPTO supports a registration in § 12 (15 U.S.C. § 1062) (a).

9th Cir. Case No. **14-55473**                                                Page 16

4. That the First Amendment of the United States of America protects the rights of a person's right to freely express themselves to the public without the interference of lawsuits.

5. It is a violation under the Sherman Act of the Federal Trade Commission's antitrust laws to monopolize or attempt to monopolize business practices.

6. § 15 (15 U.S.C. § 1065) (4) states no generic name has incontestable rights.

**8. Do you have any other cases pending in this court? If so, give the name and docket number of each case.**

No.

**9. Have you filed any previous cases which have been decided by this court? If so, give the name and docket number of each case.**

No.

9th Cir. Case No. **14-55473**  Page 17

**10. For prisoners, did you exhaust all administrative remedies for each claim prior to filing your complaint in the district court?**

N/A

DuShawn N. Thomas
**Name**
1849 west 89th street,
Los Angeles, California 90047
**Address**

**Signature**

September 2, 2014
**Date**

RECEIVED
MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

SEP 04 2014

## CERTIFICATE OF SERVICE

FILED _____
DOCKETED _____
DATE          INITIAL

Case Name:    DuShawn N. Thomas, Appellant v. Entrepreneur Media, Inc., Appellee(s).

9th Cir. Case No.: 14-55473

IMPORTANT: You must send a copy of ALL documents filed with the Court and any attachments to counsel for ALL parties in this case. You must attach a copy of the certificate of service to each of the copies and the original you file with the Court. Please fill in the title of the document you are filing. Please list the names and addresses of the parties who were sent a copy of your document and the dates on which they were served. Be sure to sign the statement below.

I certify that a copy of the <u>Informal Form of Opening Brief</u>
                    (title of document you are filing)
and any attachments was served, either in person or by mail, on the persons listed below.

Signature
Notary NOT required

| Name | Address | Date Served |
|---|---|---|
| Mark A. Finkelstein | 3161 Michelson Drive, Suite 800<br>Irvine, CA 92612 | 9/02/2014<br><s>9/20/2014</s> |